IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| | | |
|---|---|---|
| WILLA M. BELLARD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | NO. 4:09-CV-693-A |
| | § | |
| JPS HEALTH NETWORK, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
and
ORDER

Came on for consideration the motion of defendant, Tarrant County Hospital District d/b/a JPS Health Network, for summary judgment as to all claims and causes of action brought against it by plaintiff, Willa M. Bellard. Having considered the motion, its supporting brief and appendix, plaintiff's response and supporting brief and appendix, defendant's reply, the summary judgment record, and applicable legal authorities, the court concludes that the motion should be granted.

I.

Plaintiff's Claims

Plaintiff initiated this action by the filing of a complaint on November 20, 2009, asserting claims and causes of action against defendant for discrimination on the basis of age in

violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623 et seq. ("ADEA").

II.

## The Motion for Summary Judgment

Defendant argues for summary judgment on the grounds that plaintiff has no direct evidence of age discrimination, she cannot establish a prima facie case of age discrimination, and she cannot prove that defendant's legitimate, non-discriminatory reason for its action was a pretext for discrimination.

III.

## Undisputed Facts

The following facts are undisputed in the summary judgment record:

Defendant is the public hospital district in Tarrant County, Texas, and operates a main hospital facility as well as more than thirty other facilities throughout the county.

After an initial period of employment with defendant lasting from 1974 through 1981, plaintiff returned to work for defendant in 1996 as a Licensed Vocational Nurse ("LVN") following her graduation from nursing school. Beginning in 1998, plaintiff worked as an LVN at defendant's South Campus Community Health Clinic ("South Campus"), one of defendant's satellite clinics.

2

Defendant's LVNs may be employed at one of three levels: LVN, LVN Advanced, and LVN Excel. While the daily health care duties of LVNs at each level are the same, the levels differ in required experience, training, and other areas, as well as compensation, with LVN Excel being the most highly compensated. By March of 2008, plaintiff had achieved LVN Excel status.

Beginning in approximately March of 2008, Jodi Outland ("Outland"), age twenty-seven, became manager of South Campus. Outland was not a medical professional but oversaw general operations at South Campus, including the handling of patient and staff complaints, patient flow, personnel and budgetary matters, and similar functions. Outland was plaintiff's immediate supervisor.

The University of North Texas employed the physicians assigned to defendant's clinics, including South Campus, while the clinic's other staff were employed by defendant. Each physician at South Campus worked with an assigned team that included a nurse, a medical assistant, and a registration representative. Plaintiff was assigned to the team of Dr. Watemberg ("Watemberg"), that also included Angelica Mendez ("Mendez"), medical assistant, and Anna Saldana ("Saldana"), registration representative. Watemberg's team worked 8:00 a.m.

to 5:00 p.m., Monday through Friday. In October 2008, Mendez applied and was selected for a position as a medical assistant for Dr. Hicks, a new physician at South Campus, leaving Watemberg's medical assistant position vacant. Outland originally sought to fill the vacant position.

In late October of 2008, plaintiff was off of work on approved medical leave. In late November 2008, following multiple complaints about Watemberg, UNT transferred him from South Campus to another of defendant's clinics. Although defendant requested a replacement physician from UNT, the university indicated it was unable to provide one at that time. Lacking a physician to replace Watemberg, Outland decided the other positions on Watemberg's team were not needed, and she took steps to eliminate those positions. As the medical assistant position was still vacant due to Mendez's transfer to work for Hicks, Outland instructed defendant's human resources department to place the medical assistant position posting on hold. Saldana then applied for and received a transfer to another clinic. Thus, when plaintiff returned from medical leave on December 29, 2008, Watemberg had transferred to another clinic, leaving plaintiff the only remaining member of Watemberg's former team.

4

The summary judgment evidence shows that when Watemberg transferred away from the South Campus, Outland took steps, on her own and through defendant's human resources department, to secure another position for plaintiff. For example, Outland contacted the clinic to which Watemberg transferred, hoping to also transfer plaintiff to serve as his LVN; however, an LVN was already in place to assist Watemberg at the new clinic. The record reflects communications between Outland and Brandi Shukers ("Shukers"), the human resource representative assigned to assist with personnel matters at South Campus, pertaining to attempts to locate another position for plaintiff. Within a few days of plaintiff's return from leave, when no permanent LVN position had been located, Outland opted to transfer plaintiff to a floating or "pool" position with benefits, rather than to a similar pool position without benefits.

On or around January 17, 2009, Jamilla McBean ("McBean"), another LVN at South Campus, quit her job. McBean worked with Dr. Latif, working twelve-hour shifts on Mondays, Tuesdays, and alternating Fridays and Saturdays. When plaintiff inquired about the position, Outland told her she could apply like anyone else. The summary judgment record shows that Outland posted the LVN position vacated by McBean on January 30, 2009. Amanda Davis

5

("Davis"), an LVN, submitted her application, and on February 17, 2009, Outland selected her for the position vacated by McBean. Plaintiff did not apply for the position.

On January 20, 2009, at a meeting with Outland, Shukers, and Laurie Hopper, the Clinic Coordinator, plaintiff was given a letter concerning her position, which stated in pertinent part:

> As you are aware, Dr. Watemberg has transferred out of the South Campus Health Clinic effective, November 29, 2008. As such, it has become necessary to restructure the roles and responsibilities that contribute to the South Campus Health Clinic. As a result, your LVN position has been eliminated.
>
> We are pleased to communicate that we are able to extend to you a LVN Advance Floating position with benefits. You will be placed temporarily in this role effective, Wednesday, January 21, 2009. This position will allow you the opportunity to maintain your benefits and current pay while applying for open positions within the Network over the next thirty days. During this time you can experience the LVN Advance Floating position and the day-to-day functions involved with such a role. If you are interested in securing the LVN Advance Floating position, please apply through the intranet to requisition 10507. If you are not interested in accepting the position, you must communicate your decision in writing to me, Brandi Shukers, Human Resources by February 23, 2009.
>
> In the event you do not wish to accept the LVN Advance Floating position, you are encouraged to apply for other positions for which you are qualified within the Network. If you elect not to accept the LVN Advance Floating position within the Community Health and do not find other work within the Network by February 23, 2009 you will be offered a severance package by the Network.

App. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s App.") at 143 (errors in original).

Plaintiff worked in the LVN Advance Floating position until February 16, 2009, when she submitted a letter of resignation, relevant portions of which stated:

> I understand my job was eliminated because Dr. Watemberg transferred out of the clinic. I worked very hard to get promoted to an LVN EXCEL position; and unfortunately there have not been any postings since I received the above letter and since the LVN POOL ADVANCED is not comparable with my current position . . . . is would not be beneficial to accept that position.
>
> As such; I am sending my written response to you as requested by Mrs. Shukers.

Id. at 144 (errors in original). Between her receipt of the January 20, 2009, letter and the tendering of her February 16, 2009, letter to human resources, plaintiff failed to apply for any vacant positions.

IV.

Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The

movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324. See also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 597 (1986). "[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden" in response to a motion for

8

summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002) (internal quotation marks omitted).

V.

Analysis

A. Legal Framework for Age Discrimination Claims

To establish a claim of age discrimination under the ADEA, the "plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." Gross v. FBL Fin. Servs., Inc., ___ U.S. ___, 129 S. Ct. 2343, 2351 (2009). The burden of persuasion never shifts to the employer, even when the plaintiff alleges that age was a motivating factor in the challenged employment decision. Id.

While it is unclear if the Supreme Court in Gross intended to dispense with the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), in age discrimination cases,[1] the Fifth Circuit has made clear that it is bound by precedent to apply McDonnell Douglas to cases brought pursuant to the ADEA. Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 378 (5th Cir. 2010).

---

[1] "[T]he Court has not definitively decided whether the evidentiary framework of McDonnell Douglas . . . utilized in Title VII cases is appropriate in the ADEA context." Gross v. FBL Fin. Servs., Inc., ___ U.S. ___, 129 S. Ct. 2343, 2349 n.2 (2009).

The McDonnell Douglas framework requires plaintiff first to make out a prima facie case. McDonnell Douglas, 411 U.S. at 802. If she succeeds, a presumption of discrimination arises and the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for its actions. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-7 (1993). If the defendant meets this burden of production, the plaintiff bears the ultimate burden to prove that the employer's proffered reason is not true but is a pretext for intentional discrimination. Id. at 507-8.

B. Merits

1. No Direct Evidence

"Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 897 (5th Cir. 2002) (internal citation omitted). Plaintiff offers as direct evidence of discrimination the following comments allegedly made by Outland after she became director of South Campus: (1) that some older employees had been at the clinic since the day it opened, "as long as babe was a pup," App. in Supp. of Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s App.") at 2, and that was going to change; (2) Outland "made it clear" that some employees might want to look for another job, id.; (3) telling

10

older employees "they were not going to tell her how to manage things just because they were older," id. at 3; (4) telling another employee that the employee could not talk to Outland a certain way, just because she was older; and (5) saying "all the old people had to go." Id. at 7.

Comments of the type described by plaintiff are evidence of discrimination only if they are: "1) related to the protected class of persons of which the plaintiff is a member; 2) proximate in time to the complained-of adverse employment decision; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue." Jackson, 602 F.3d at 380. All of the alleged comments by Outland suffer the same fatal flaws: none were proximate in time, nor pertained to, the elimination of plaintiff's position.

Plaintiff and her former co-worker, Melinda Thompson, both allege that Outland made the comments within a couple of months after she became clinic manager in March 2008. Plaintiff received notice on January 20, 2009, that her position had been eliminated, resulting in the termination of her employment on February 23, 2009. Plaintiff directs the court to no evidence showing that any of the alleged comments were directed to her or pertained to the elimination of her position several months down

the road. Thus, plaintiff has offered no evidence that the alleged comments are in any way probative of age discrimination. See, e.g., Jackson, 602 F.3d at 380; Rubinstein v. Adm'rs of Tulane Educ. Fund, 218 F.3d 392, 401 (5th Cir. 2000).[2]

2. No Circumstantial Evidence

Defendant argues that plaintiff for a number of reasons has failed to establish a prima facie case of age discrimination. Although the court is inclined to believe defendant's arguments have merit, the court need not devote any time to their consideration, as plaintiff has so clearly failed to adduce any evidence of pretext. Although plaintiff may make such a showing "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence," Jackson v. Cal-Western Packaging Corp., 602 F.3d 374, 378-79 (5th Cir. 2010) (internal citations and quotation marks omitted), she has done neither.

In response to an inquiry on an employment application submitted by plaintiff in July 2009, plaintiff answered:

> Reason for Leaving:
> Laid off. My job was eliminated when the physician I was working with or assigned to transferred to another

---

[2] To the extent plaintiff argues in her brief that the alleged comments are "[s]ubstantial evidence . . . that age was the motivating factor" for the elimination of her position, Pl.'s Br. at 13, that argument is foreclosed by Gross v. FBL Fin. Servs., Inc., ___ U.S. ___, 129 S. Ct. 2343, 2351 (2009).

12

community health center.

Def.'s App. at 154. Discussion about this employment application during plaintiff's deposition resulted in the following exchange:

> Q. Was [your reason for leaving defendant] one of the things that you were asked on your application in July of '09?
>
> A. Yes.
>
> . . . .
>
> Q. And was the honest reason for why you ceased being employed at JPS that you were laid off, your job was eliminated when the physician you worked with or were assigned to transferred to another community health center?
>
> A. Yes.
>
> Q. Is that the honest reason for why you're not at JPS anymore?
>
> A. Yes.
>
> Q. No other reason, correct?
>
> A. Correct.

Id. at 44. This testimony makes clear that plaintiff understood she no longer worked for defendant because her position was eliminated following Watemberg's transfer from South Campus. Plaintiff cannot now controvert this sworn deposition testimony with a conclusory assertion in her affidavit that "[t]he real reason for [her] termination was [her] age." Pl.'s App. at 5.

13

See S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996).

Plaintiff has adduced no summary judgment evidence to show that defendant's reason was untrue, and the deposition testimony cited above, as well as plaintiff's acknowledgment of the same in her resignation letter, indicate that plaintiff also believed defendant's reason to be true.

Plaintiff has likewise failed to produce competent summary judgment evidence of disparate treatment. Disparate treatment requires plaintiff to show defendant's preferential treatment of younger employees under "nearly identical" circumstances. Little v. Republic Refining Co., Ltd., 924 F.2d 93, 97 (5th Cir. 1991). Plaintiff's contention in her brief that defendant transferred younger employees without the necessity of posting or applying for a position fails to show pretext, as plaintiff has failed to identify any nurse, younger than plaintiff, who was transferred in such a manner under nearly identical circumstances. Although plaintiff alleges that three younger LVNs at the South Campus did not have their positions eliminated, she fails to allege that they were similarly situated to her, that is, that the physician to whom they were assigned transferred out of the clinic and was not replaced by UNT. The pretext showing fails absent such

14

similar circumstances. See Little, 924 F.2d at 96-97; see also Berquist v. Washington Mut. Bank, 500 F.3d 344, 353-54 (5th Cir. 2007).

Plaintiff contends that Martinez and Saldana, also both assigned to Watemberg, were younger than her and did not lose their jobs. Defendant's summary judgment evidence establishes that neither Martinez nor Saldana were similarly situated to plaintiff. Plaintiff alleges that Martinez was allowed a lateral transfer; however, the evidence shows Martinez was a medical assistant, not an LVN, and she applied and was selected for a transfer to work with another physician at South Campus prior to the time of Watemberg's departure. Likewise, the evidence shows that Saldana was Watemberg's registration representative, not an LVN, and she similarly applied and was selected for a position at another clinic. It is undisputed that plaintiff did not apply for any vacant positions after receiving the January 20, 2009, letter.

For the same reason, plaintiff's contention that she should have been placed in the position vacated by McBean fails to show disparate treatment. Although plaintiff contends she asked about the position, she never alleges she applied for the position, nor does she dispute that Outland told her she could apply for the position like anyone else, or that she was informed in writing on

January 20, 2009, that she must apply for other positions for which she was interested. Plaintiff never applied for any vacant position, including the vacancy left by McBean. The fact that Davis, a younger LVN, applied and was selected for the position vacated by McBean is no evidence of disparate treatment--and hence no evidence of pretext--when plaintiff failed to apply for the position.[3]

Plaintiff relies on Outland's testimony that she had previously transferred other employees within the clinic at her discretion without the necessity of a formal application, but did not transfer plaintiff, and on similar comments by Shukers. The full text of Outland's testimony, however, reflects that Outland had discretion to accomplish such transfers "as long as the hours and stuff were the same." Pl.'s App. at 33. It is undisputed, however, that the hours required for the McBean position were not the same as for plaintiff's position: plaintiff worked Monday through Friday, 8:00 a.m. to 5:00 p.m., while McBean had worked twelve hour shifts on Mondays, Tuesdays, and alternating Fridays and Saturdays.

Plaintiff in her affidavit also makes the conclusory assertion that "four positions were eliminated" and that "[a]ll belonged to employees over forty-five years old." Pl.'s App. at

---

[3] Evidence in the record supports the conclusion that plaintiff was only interested in applying for LVN Excel positions, and she testified she never saw any such positions posted.

5. Plaintiff does not identify the positions to which she alludes, nor does she provide any evidence of the characteristics of the employees occupying the positions as would enable the court to see evidence of pretext. Affidavits containing unsubstantiated and subjective beliefs, summary assertions and conclusory allegations are not competent summary judgment evidence. <u>First Colony Life Ins. Co. v. Sanford</u>, 555 F.3d 177, 181 (5th Cir. 2009); <u>Simmons v. Lyons</u>, 746 F.2d 265, 269 (5th Cir. 1984).[4] In short, plaintiff has adduced no summary judgment evidence of pretext, and defendant's motion is to be granted.

## VI.

### Order

Therefore,

The court ORDERS that defendant's motion for summary judgment be, and is hereby, granted, and that all claims and causes of action brought by plaintiff, Willa M. Bellard, against defendant, JPS Health Network, be, and are hereby, dismissed with prejudice.

SIGNED March 3, 2011.

_____
JOHN McBRYDE
United States District Judge

---

[4] For the same reasons, the court finds the conclusory assertions in the affidavit of Melinda Thompson, plaintiff's former co-worker, to be evidence of nothing save her own opinions and beliefs.

17